LILLIAN FREESTONE *vs.*
UNITED ELECTRIC RAILWAYS COMPANY.

JUNE 6, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This action of trespass on the case for negligence was tried in the superior court before a jury and resulted in a verdict of $10,000 for the plaintiff. Thereafter the defendant's motion for a new trial was denied by the trial justice and each party duly prosecuted a bill of exceptions to this court.

It will become necessary to pass upon plaintiff's bill of exceptions only if this court sustains any of defendant's exceptions and remits the case to the superior court for a new trial or for the entry of judgment in its favor. We shall therefore first consider the exceptions upon which defendant relies, namely, to the refusal of the trial justice to direct a verdict in its favor, to his instruction to the jury that the doctrine of the last clear chance could be applied in this case, and to his refusal to grant defendant's motion for a new trial. Its other exceptions which are not pressed are deemed to be waived.

The present action is to recover for personal injuries and property damage. The plaintiff, who was fifty-eight years of age at the time of the trial, was a practical nurse actively engaged in that occupation. The evidence shows that about 8:10 a.m. on the morning of January 11, 1946 a collision between an automobile owned and operated by plaintiff and a bus of the defendant company took place about in

the middle of the intersection of Dorrance and Friendship streets in the city of Providence. Just prior to the collision plaintiff was proceeding down Friendship street in an easterly direction and defendant's bus was being driven in a southerly direction on Dorrance street. The plaintiff's automobile had been parked on a lot at the corner of Clifford and Chestnut streets all night before the accident and that morning when she started to drive it the engine was cold. While coming down Friendship street the automobile had bucked and stalled near Richmond street and a man helped to start it by giving it a push.

There is little dispute as to the place where the vehicles collided but the evidence as to the speed at which they entered the intersection, their positions on the highway in relation to each other, what the respective drivers could or did see, how they conducted themselves in the circumstances, and whether plaintiff's automobile was stationary at the time of the accident was in sharp conflict.

The chief issue raised is whether on the evidence presented this was a case in which the doctrine of the last clear chance should in the first instance be submitted to the jury for its consideration. The trial justice took the view that it was such a case and the correctness of his ruling in that regard is questioned by defendant's exceptions to his denial of its motion for a directed verdict and to his charge to the jury. These exceptions may be considered together.

In denying defendant's above motion the trial justice among other comments made the following statement: "I think on the Plaintiff's own testimony, as she approached Dorrance Street with a view to her left, had she stopped there would have been no accident. If she attempted to cross in front of that bus and simply failed because her car wouldn't make it she was guilty of negligence as a matter of law. I think the operator of the bus was under precisely the same obligation to her as she was to him, and that he would be negligent too in not stopping; but if she was stopped in the middle of the highway, even though she was

negligent in approaching the place where she stopped and she was simply there helpless, and the operator of the bus had an opportunity—a clear opportunity—the law expresses it—to pause and avoid that accident either by stopping° or by shifting his course or by taking any other action that was available to him, and open to him at the time in the exercise of reasonable care, then it may be that her prior negligence was a condition and not a cause of this accident, and I think I am bound to submit that phase of the case to the jury and hear what they have to say about it."

In charging the jury the trial justice, after explaining carefully and in considerable detail the last clear chance rule and its application in the instant case, used the following language: "The defendant in a case of that kind must have the last clear chance to avoid the accident, and if it has that chance and does not seize it and take advantage of it, then it is regarded as the sole cause of the accident. If these two cars were in motion at the time they came together the obligation of the defendant was not any greater than that of the plaintiff—they are in the same boat, and in that case your verdict should be for the defendant; but, if you find that the plaintiff's car was stopped and that it was stopped a sufficient period of time so that the defendant could have avoided the accident then and then only should your verdict be for the plaintiff."

Without attempting to set out fully all the evidence, bearing on the above exceptions the following portions may be noted. As being favorable to her, plaintiff referred to evidence tending to show that as she started to go through the intersection she looked to the left and to the right and saw no traffic approaching; that some cars were parked on Dorrance street to her left and were also in a parking lot on the northwest corner causing her view in that direction to be somewhat obstructed; that as plaintiff started into Dorrance street she blew her horn twice, shifted into second gear, and proceeded slowly at about eight to ten miles an hour; that at such time she looked to her left and saw

defendant's bus at the corner of Pine street, a distance of 150 to 200 feet away; that Dorrance street which she was crossing is 44 feet wide between curbs; that when approximately in the center of the intersection the engine of her automobile bucked and stalled for a second and her car stopped; that plaintiff then looked to her left and saw defendant's bus coming toward her at an estimated distance of 20 feet; and that the collision which immediately followed resulted in the substantial demolition of her automobile and the infliction of personal injuries consisting of a fractured pelvis, two fractured ribs, numerous contusions on her chest and shoulder, and a severe concussion, rendering her unconscious for a time.

There was also evidence that drag marks on the street showed that plaintiff's automobile was pushed 24 feet in a southerly direction on Dorrance street, but that no brake marks of any kind appeared on the highway; that upon examination immediately after the accident the brakes of defendant's bus were found to be in good condition, having 75 pounds air pressure indicating that it could be stopped in less than 10 feet if proceeding at fifteen miles per hour; that the bus contained no passengers; that just prior to the time of the collision the driver had raised his hand to his face as if to shield his eyes; and that he was engaged in conversation with another employee of the defendant company who was on the bus.

On the other hand defendant calls attention to evidence tending to show that both vehicles were approaching the intersection simultaneously; that neither slowed down; that the bus was traveling at a moderate speed but plaintiff's car was proceeding rapidly and came out of Friendship street directly in front of the bus; that the automobile did not stall or stop in the intersection but was in motion at all times; and that plaintiff is the only witness who testified to such stalling or stopping.

In support of its contentions defendant has cited several decisions of this court involving collisions of vehicles at

street intersections. In our opinion they are distinguishable on their facts from the instant case and are not in point here. The general principles of law applicable to such collisions were set out fully by this court in *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co.*, 58 R. I. 451, where it was held that what constitutes due care under the circumstances in any case must depend upon the facts therein. In the *Dembicer* case, however, no question of the last clear chance was presented by the evidence.

The defendant has also called our attention to two cases involving a discussion of that doctrine, namely, *Correia* v. *Cambra*, 51 R. I. 472, and *Lebrun* v. *United Electric Rys.*, 54 R. I. 54. In our judgment they are both distinguishable from the instant case. In the *Correia* case it was not disputed that both vehicles were in motion at all times. In the *Lebrun* case, while plaintiff's automobile was struck when it was on the track of a street railway company, a place of danger in itself, the court applied the rule that certain positive evidence in the case could not be impeached by plaintiff's indefinite and speculative testimony, and held as a matter of law that no negligence on the part of the defendant was shown.

It is well settled that a trial justice should not direct a verdict in favor of a defendant if the plaintiff can recover on any reasonable view of the evidence. *Gilbane* v. *Lent*, 41 R. I. 462. The finding of the trial justice that plaintiff here was guilty of contributory negligence as a matter of law in entering the intersection as she did was to defendant's advantage and it cannot complain thereof. However, assuming without deciding that such finding was sound, in our opinion there was still the question for the jury to decide whether on all the conflicting evidence the defendant had the last clear chance to avoid the accident. In our judgment the trial justice ruled correctly in the circumstances in refusing to direct a verdict for defendant and also in charging the jury that the question of whether any such last clear

chance existed was for it to determine. The defendant's exceptions on those two issues are overruled.

In passing on its motion for a new trial, the trial justice stated that the case was close on the question of liability. He reviewed the evidence and expressed his opinion that both parties were guilty of negligence in the manner in which their respective vehicles were operated in the circumstances. He then held that on the evidence the only way the case could be viewed was whether the last clear chance doctrine was applicable. He stated: "The plaintiff's own testimony indicates that she was stopped a sufficient period of time so the bus driver, had he been alert and on the job, could have stopped the bus and avoided the accident." He also observed that the testimony of the police and the marks on the highway showing how far plaintiff's automobile was pushed tended to support her claim and that he considered it fairly clear that the jury could with propriety find either way in the case. He concluded by deciding: "I do not think I would be justified in disturbing the verdict under the circumstances."

In our judgment it is clear that the trial justice in denying defendant's motion for a new trial gave the matter his careful consideration and exercised his independent judgment as was his duty in the circumstances. He had the benefit, which we do not have, of seeing and hearing the witnesses testify and of forming his opinion of their credibility. We cannot say that as to liability his decision to permit the verdict of the jury to stand was clearly wrong.

Whether the damages awarded by the jury were excessive so that a new trial should be granted has been argued to us by defendant. It appears from a statement in plaintiff's brief and from language used by the trial justice when he denied defendant's motion for a new trial that the above question was not argued before him. At that time he said: "There is no question about whether the verdict was excessive or not." However, since the defendant in its said motion alleged as a ground thereof that the damages award-

ed by the jury were excessive we have given the point consideration.

An examination of the evidence shows that plaintiff was severely injured by the accident, being hospitalized for about seven weeks and unable to work for approximately fifteen months thereafter. When she left the hospital she had difficulty in walking and did not have normal functioning in that respect. This condition gradually improved. Although the fractures of her ribs and of her pelvis healed properly and the fragments are in good position she suffered a great deal of pain for a considerable period after she was injured, even up to the time of her trial, almost five years subsequent to that occurrence. She testified that she was unable to work steadily, could not do any heavy lifting or bend freely, and that her back was weak, necessitating the wearing of a special corset which had been prescribed for her. Her physician testified that the last time he saw her she still complained of pain and vertigo and that in his opinion the prognosis was very unfavorable.

As a result of the accident plaintiff suffered actual monetary damages because of the destruction of her automobile, her inability to work, and her expenses of various kinds, amounting in all to more than $4,000. Taking also into consideration her pain and suffering, the fact that apparently her injuries still affect her ability to work steadily and normally at her occupation, and that such a condition is likely to continue indefinitely, we are unable to say that the damages awarded by the jury are grossly excessive. The defendant's exception to the denial of its motion for a new trial is therefore overruled.

All of the defendant's exceptions are overruled, the plaintiff's exceptions are overruled *pro forma,* and the case is remitted to the superior court for entry of judgment for the plaintiff on the verdict.

*Edward F. McElroy, James J. Corrigan,* for plaintiff.

*Earl A. Sweeney, Frank J. McGee,* for defendant.